ACCEPTED
03-15-00726-CV
8417364
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/31/2015 7:31:31 AM
JEFFREY D. KYLE
CLERK

No. 03-15-00726-CV

_____

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/31/2015 7:31:31 AM
JEFFREY D. KYLE
Clerk

_____

## The GEO Group, Inc.
Appellant

v.

## Glenn Hegar,
Comptroller of Public Accounts of the State of Texas
and
Ken Paxton,
Attorney General of the State of Texas
Appellees

_____

# Brief of Appellant

_____

Ray Langenberg
State Bar No. 11911200
rlangenberg@scottdoug.com
Eric Hagenswold
State Bar No. 24002205
ehagenswold@scottdoug.com
Scott Douglass & McConnico LLP
303 Colorado, Suite 2400
Austin, Texas 78701
(512) 495-6300
(512) 495-6399 Fax

ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

<u>Plaintiff-Appellant</u>
The GEO Group, Inc.

<u>Counsel for Appellants</u>
Ray Langenberg
State Bar No. 11911200
rlangenberg@scottdoug.com
Eric Hagenswold
State Bar No. 24002205
ehagenswold@scottdoug.com
Scott Douglass & McConnico LLP
303 Colorado, Suite 2400
Austin, Texas  78701
(512) 495-6300
(512) 495-6399 Fax

<u>Defendants-Appellees</u>
Glenn Hegar, Comptroller of Public Accounts of the State of Texas
        and
Ken Paxton, Attorney General of the State of Texas

<u>Counsel for Defendant-Appellee</u>
Ken Paxton, Attorney General of the State of Texas
Charles E. Roy, First Assistant Attorney General
James Davis, Deputy Attorney General for Civil Litigation
Robert O'Keefe, Chief, Tax Division
Charles Eldred, Assistant Attorney General
Attorney-In-Charge
State Bar No. 00793681
P.O. Box 12548
Austin, TX 78711-2548
512 475-1743
charles.eldred@texasattorneygeneral.gov

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.................................................................ii

TABLE OF CONTENTS.......................................................................................iii

INDEX OF AUTHORITIES....................................................................................v

STATEMENT OF THE CASE..................................................................................1

STATEMENT OF JURISDICTION...........................................................................1

RECORD AND APPENDIX.....................................................................................1

ISSUE ON APPEAL...............................................................................................2

STATEMENT OF FACTS.......................................................................................2

SUMMARY OF ARGUMENT.................................................................................4

ARGUMENT..........................................................................................................5

I.      The authorities.............................................................................................5

        A.      The statute..........................................................................................5

        B.      The Comptroller rule...........................................................................7

        C.      Comptroller rulings.............................................................................7

II.     Application of the rules of statutory construction lead to the conclusion
        that a detention facility is a "home" or "residence."......................................8

        A.      Introduction........................................................................................8

        B.      Limits on the rule of strict construction................................................8

        C.      The ordinary meaning rule supports GEO...............................................8

        D.      The conjunction "or" indicates that the Legislature intended a
                broad construction..............................................................................10

        E.      Uniform and consistent application of the Comptroller rule
                supports GEO.....................................................................................11

III. The Comptroller's interpretation is unworkable and unreasonable. .................. 13

    A. The Comptroller offers no clear, positive definition. ............................. 13

    B. The Comptroller's negative definition fails to provide meaningful guidance. ................................................................................................. 13

    C. The Comptroller's negative attributes cannot be uniformly and consistently applied. ................................................................................ 14

        1. Search and seisure. ...................................................................... 14

        2. Involuntary confinement. ............................................................. 17

        3. The right to exclude others. ......................................................... 18

    D. The residence does not have to be occupied by the owner or tenant. ...................................................................................................... 18

Conclusion ............................................................................................................. 21

CERTIFICATE OF SERVICE .............................................................................. 23

CERTIFICATE OF COMPLIANCE ...................................................................... 24

APPENDIX ............................................................................................................ 24

# INDEX OF AUTHORITIES

## Constitutional Provisions

Tex. Const. art. 1, § 9................................................................................15

U.S. Const. amend. IV ..............................................................................15

## Statutes

Tex. Fam. Code § 51.02 (13) (West 2014).........................................................16

Tex. Fam. Code § 51.02 (14) (West 2014).........................................................16

Tex. Gov't Code § 22.220 (West Supp. 2015) ....................................................1

Tex. Health & Safety Code Ch. 322 (West 2005) ...................................... 17, 18

Tex. Human Res. Code § 63.001 (West 2009)................................................9, 15

Tex. Tax Code § 11.111 (West 2008).................................................................9

Tex. Tax Code § 112.054 (West 2015)................................................................7

Tex. Tax Code § 112.154 (West 2015)................................................................7

Tex. Tax Code § 151.317 (West 2015)..............................................................22

Tex. Tax Code § 151.317(a)(1) (West 2015) ...................................................4, 5

Tex. Tax Code § 151.317(c) (West 2015) ........................................................4, 6

Tex. Tax Code § 151.317(c)(1) (West 2015) ..................................................6, 19

## Cases

*Board of Insurance Commissioners v. Guardian Life Ins. Co*., 180 S.W.2d 906 (Tex. 1944) ....................................................................................10

*Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433 (Tex. 2009) ...................9

*Flores v. Melo-Palacios*, 921 S.W.2d 399 (Tex. App. - Corpus Christi 1996, writ denied)..............................................................................10

*Greater New Braunfels Home Builders Ass'n v. City of New Braunfels*, 240 S.W.3d 302 (Tex. App. - Austin 2007, pet. denied) .........................22

*In re Estate of Steed*, 152 S.W.3d 797 (Tex. App. - Texarkana 2004, pet. denied) ...............................................................................................9

*Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556 (Tex. 2014)..............................9

*Key Western Life Ins. Co. v. State Bd. of Ins.*, 350 S.W.2d 839 (Tex. 1961)........7

*Monsanto Co. v. Cornerstones Municipal Utility District*, 865 S.W.2d 937
　　　(Tex. 1993) .................................................................................................8

*Muniz v. State*, 852 S.W.2d 520 (Tex. Crim. App. 1993) ...................................16

*North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804
　　　S.W.2d 894 (Tex. 1991) .............................................................................8

*Sharp v. Tyler Pipe Industries, Inc.*, 919 S.W.2d 157 (Tex. App. - Austin
　　　1996, writ denied)........................................................................ 8, 11, 21

*Southwestern Bell Telephone Company Co. v. Public Utility Commission*,
　　　31 S.W.3d 631 (Tex. App. - Austin 2000, *aff'd,* 92 S.W.3d 424
　　　(2002)...........................................................................................................17

*Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164 (Tex. App. - Austin 1997,
　　　no pet.) ...................................................................................... 8, 11, 14, 21

*United States v. Knights*, 534 U.S. 112 (2001)....................................................17

*Zimmer US, Inc. v. Combs*, 368 S.W.3d 579 (Tex. App. - Austin 2012, no
　　　pet.) ........................................................................................................ 19, 21


**Other Authorities**

34 Tex. Admin. Code §3.295 (West 2015)......................................................7, 12

34 Tex. Admin. Code §3.295(a)(6) (West 2015) ...............................................19

Black's Law Dictionary (10th Ed. 2014) "Home" and "Residence" ....................9

## STATEMENT OF THE CASE

*Nature of the Case:*    Appellant/Plaintiff is seeking a refund of sales tax paid on gas and electricity consumed for residential purposes at detention facilities housing government prisoners.

*Trial Court:*    261ˢᵗ Civil District Court of Travis County, Texas; Judge Laura Livingston presiding.

*Course of Proceedings:*    The parties filed cross-motions for summary judgment and responses. CR 27, 243, 269, and 278. The trial court issued an order granting Defendants' motion and rendering a take-nothing judgment.

## STATEMENT OF JURISDICTION

This Court has jurisdiction of this appeal from a final judgment of a district court pursuant to Texas Government Code § 22.220 (West Supp. 2015).

## RECORD AND APPENDIX

There is no Reporter's Record – this is a summary judgment case. The Clerk's Record ("**CR**") includes the pleadings, motions, responses, and order.

The Appendix consists of the following items:

App. 1    November 12, 2015 Order granting Defendant's Motion for Summary Judgment and rendering take-nothing judgment for Defendant. CR 286.

App. 2    Texas Tax Code § 151.317 (Gas and Electricity)

App. 3    34 Texas Administrative Code § 3.295 (Natural Gas and Electricity)

App. 4    Black's Law Dictionary (10th ed. 2014) definitions of "home" and "residence"

## ISSUE ON APPEAL

Whether electricity and gas used at detention facilities for government prisoners qualify for the Texas sales tax exemption for residential use.

## STATEMENT OF FACTS

Appellant The GEO Group, Inc. ("**GEO**") is a private enterprise operating facilities that house government detainees. As will be explained, the issue is whether these facilities were residential facilities, comparable to other residential facilities such as nursing homes and dormitories, so that the purchases of gas and electricity for the facilities were exempt from the Texas sales tax. GEO operates two types of facilities: government-owned facilities and contractor-owned facilities.

**Government-owned facilities** – These facilities involve a service agreement in which GEO operates the government facility. For example, Smith Affidavit Exhibit A-1 is the service agreement with the Texas Department of Corrections to operate the State's Lockhart Correctional Facility. CR 44. The agreement describes the services:

B.1.1 SERVICES BEING ACQUIRED

The Contractor shall, in accordance with the terms of this Contract, provide all necessary personnel, equipment, materials, supplies, and services (except as may be furnished by the Department as specifically identified within the Request for Proposal (RFP)) and otherwise do all things necessary for, or incidental to, the management of the 1,000 bed Secure Work Program Facility with associated programs within the State of Texas for the detention, training, education, rehabilitation, reformation, on-site employment of sentenced felons, and any expansion that may be subsequently authorized during the term of this Contract , located at Lockhart, Texas.

CR 56. GEO is not a tenant -- it is not leasing the facility from the government. Rather GEO is providing services for the government at the government's facility.

**Contractor-owned facilities** – GEO uses its own or affiliate-owned facilities to house government detainees. For example, Smith Exhibit A-2 is a Service Agreement between Karnes County and Wackenhut Corrections Corporation[1] to operate a privately owned facility:

> **SERVICES AGREEMENT**
> **between**
> **KARNES COUNTY, TEXAS**
> **and**
> **WACKENHUT CORRECTONS CORPORATION**
>
> This Services Agreement (the "Agreement"), dated as of April 24, 1998, is made and entered into by and between KARNES COUNTY, a political subdivision of the State of Texas (the "County") with its mailing address as 101 N. Panna Maria Street, Karnes City, Texas 78118-2998 and WACKENHUT CORRECTIONS CORPORATION, a Florida corporation ("Wackenhut") with its principal office and mailing address located at 4200 Wackenhut Drive, Palm Beach Gardens, Florida 33410.

CR 160. Under this Services Agreement, the county is not a tenant – it is not leasing the facility from GEO. Rather, GEO retains possession of the facility and provides the housing of detainees and services. As will be shown in Section I.A of the Argument, the distinction between use by the owner and use by a tenant becomes significant in determining the applicable subsection.

---

[1] GEO was formerly known as Wackenhut Corrections Corporation.

The Comptroller audited GEO for sales and use tax and a dispute arose over whether GEO's purchases of gas and electricity were taxable or exempt. Because the gas and electricity were being used for lighting, heating, cooling, food preparation, recreation, and other activities in the living quarters of the facilities, GEO contended that the gas and electricity qualified for the residential use exemption. However, the Comptroller decided otherwise and assessed sales tax on transactions in which GEO had purchased gas and electricity without paying the tax. GEO paid the assessment under protest.

During the audit period, GEO had paid sales tax on some purchases of gas and electricity. So GEO filed a refund claim for those tax payments, claiming the residential use exemption. The Comptroller denied the refund claim. In this litigation, GEO is seeking a refund of its audit protest payment and a refund of the taxes that it paid tax during the audit period. These facts are supported by the Affidavit of Reed Smith. CR 40.

## SUMMARY OF ARGUMENT

The sales tax statute exempts the "residential" use of gas and electricity, which is defined as gas and electricity used in a building occupied as a "home" or "residence." Tex. Tax Code § 151.317(a)(1) and (c) (West 2015). "Home" and "residence" are undefined terms that should be given their common dictionary definitions as "a dwelling place" and "the act or fact of living in a

given place for some time." The detention facilities satisfy these definitions since they provided lodging for the detainees.

Furthermore, the terms should be consistently and uniformly applied. The Comptroller has recognized that nursing homes and school dormitories qualify as residences, even though the occupant may not own the facility, the occupant may have a permanent residence elsewhere, and the occupant may be there involuntarily. In all relevant respects, GEO's detention facilities are comparable to nursing homes and dormitories, and should qualify for the residential use exemption.

## ARGUMENT

### I. The authorities.

### A. The statute.

The sale of gas and electricity for residential use is exempt from the sales and use tax under Texas Tax Code § 151.317(a)(1) (West 2015) (Appendix 2):

> (a) Subject to Sections 151.359 and 151.1551 and Subsection (d) of this section, gas and electricity are exempted from the taxes imposed by this chapter when sold for:
>
> (1) residential use; …

The references to Section 151.359 (Property Used In Certain Data Centers; Temporary Exemption), Section 151.1551 (Registration Number Required For Timber And Certain Agricultural Items) and Subsection (d) are irrelevant to the residential use exemption and this litigation.

Texas Tax Code § 151.317(c) has separate definitions of "residential use" when "use is by the owner" and when "use is by a tenant":

> (c)    In this section, "residential use" means use:
>
>     (1) in a family dwelling or in a multifamily apartment or housing complex or building or in a part of a building occupied as a home or residence when the <u>use is by the owner</u> of the dwelling, apartment, complex, or building or part of the building occupied; or
>
>     (2) in a dwelling, apartment, house, or building or part of a building occupied as a home or residence when the <u>use is by a tenant</u> who occupies the dwelling, apartment, home, or building or part of a building under a contract for an express initial term for longer than 29 consecutive days.

*Id*. §151.317(c) (emphasis added).

As previously explained, this case involves two types of agreements (1) service agreements for government-owned facilities and (2) service agreements for contractor-owned facilities. Neither type of agreement involves the lease of the facility to the other party, so no tenancy is involved. *See* CR 206 (Black's Law Dictionary definition of "tenant"). Rather, in both instances, use is by the owner of the facility – the government uses its facilities to house government prisoners and the contractor uses its facilities to house government prisoners. Accordingly, subsection (c)(1), covering use "by the owner," is the relevant definition. Furthermore, as will be explained in Section III of this Brief, the statute does not require that the owner be the resident in order to qualify for residential use.

## B.     The Comptroller rule

The definition of "residential use" in Comptroller Rule 3.295 largely tracks the statute, but adds a nursing home as an example of use by the owner:

> (6) Residential use--Use in a family dwelling or in a multifamily apartment complex or housing complex or <u>nursing home</u> or in a building or portion of a building occupied as a home or residence when the use is by the owner of the dwelling, apartment, complex, home, or building or part of the building occupied. Residential use also includes use in a dwelling, apartment, complex, house, or building or part of a building occupied as a home or residence when the use is by a tenant who occupies the dwelling, apartment, complex, house, or building or part of a building under a contract for an express initial term of more than 29 consecutive days. Absent a contract, only the period exceeding 29 consecutive days will be considered residential use, when supported by valid documentation (i.e., receipts, canceled checks, etc.). For purposes of the exemption for residential use of natural gas and electricity, nursing homes qualify for exemption only for periods beginning after December 31, 1987.

34 Tex. Admin. Code §3.295 (West 2015) (emphasis added) (Appendix 3).

## C.     Comptroller rulings.

There are no prior Comptroller decisions on detention facilities, so this a case of first impression subject to trial de novo.  *See* Tex. Tax Code §§ 112.054 (trial de novo for suit after protest payment) and 112.154 (trial de novo for suit for tax refund) (West 2015).  "Trial de novo has been defined as 'A new trial or retrial had in an appellate court in which the whole case is gone into as if no trial whatever had been had in the court below.'"  *Key Western Life Ins. Co. v. State Bd. of Ins.*, 350 S.W.2d 839, 846 (Tex. 1961), quoting Black's Law Dictionary.

**II. Application of the rules of statutory construction lead to the conclusion that a detention facility is a "home" or "residence."**

**A. Introduction.**

By dictionary definition, by common usage, and by analogy to other examples, a detention facility is a "home" or "residence."

**B. Limits on the rule of strict construction.**

It has been said that tax exemptions should be strictly construed. *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991). However, "the rule of strict construction cannot be used as an excuse to stray from reasonableness." *Sharp v. Tyler Pipe Industries, Inc.*, 919 S.W.2d 157, 161 (Tex. App. - Austin 1996, writ denied). Thus, for example, in the *Texas Citrus Exchange* case, this Court rejected the Comptroller's interpretation of the tax exemption for electricity because the interpretation was unreasonable. *Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164 (Tex. App. - Austin 1997, no pet.).

**C. The ordinary meaning rule supports GEO.**

"When the legislature has failed to define a word or term, courts will apply its ordinary meaning." *Monsanto Co. v. Cornerstones Municipal Utility District*, 865 S.W.2d 937, 939 (Tex. 1993). One method of determining ordinary meaning is Black's Law Dictionary. *E.g.*, *Entergy Gulf States, Inc. v.*

*Summers*, 282 S.W.3d 433, 437-38 (Tex. 2009). Black's Law Dictionary defines the terms as follows:

> **home** (bef. 12c) A dwelling place.
>
> **residence** (14c) **1.** The act or fact of living in a given place for some time <a year's residence in New Jersey>. — Also termed *residency*. **2.** The place where one actually lives, as distinguished from a domicile <she made her residence in Oregon>. • *Residence* usu. just means bodily presence as an inhabitant in a given place; *domicile* usu. requires bodily presence plus an intention to make the place one's home. A person thus may have more than one residence at a time but only one domicile. Sometimes, though, the two terms are used synonymously. Cf. DOMICILE (2). **3.** A house or other fixed abode; a dwelling <a three-story residence>. **4.** The place where a corporation or other enterprise does business or is registered to do business <Pantheon Inc.'s principal residence is in Delaware>.

Black's Law Dictionary (10th Ed. 2014) "Home" and "Residence" (Appendix 4). GEO's detention facilities meet both definitions.

Another source of ordinary meaning may be "the use and definitions of the word in other statutes and ordinances, and the use of the words in our rules of evidence and procedure." *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014).

- Under Texas law, a juvenile can be housed in a "residential facility for the placement of juveniles for periods up to one year in length." Tex. Human Res. Code § 63.001 (West 2009).

- Public property used to provide transitional housing for indigents can be "residential property." Tex. Tax Code § 11.111 (West 2008).

- For venue purposes, "[a] person may establish only one domicile, whereas he or she may have several residences." *In re Estate of Steed*, 152 S.W.3d 797, 803 (Tex. App. - Texarkana 2004, pet. denied).

Appellant's Brief – Page 9
1264111

- And for personal jurisdiction, "[r]esidence simply requires bodily presence as an inhabitant in a given place." *Flores v. Melo-Palacios*, 921 S.W.2d 399, 401 (Tex. App. - Corpus Christi 1996, writ denied).

All of these uses of the term "residence" are consistent with GEO's construction of the term.

## D. The conjunction "or" indicates that the Legislature intended a broad construction.

In this case, the Legislature provided that the building may be occupied as a "home <u>or</u> residence," indicating that the building qualifies if it is either a home or a residence. It does not have to be both because "or" is disjunctive:

> "Ordinarily the words 'and' and 'or,' are in no sense interchangeable terms, but, on the contrary, are used in the structure of language for purposes entirely variant, the former being strictly of a conjunctive, the latter, of a disjunctive, nature."

*Board of Insurance Commissioners v. Guardian Life Ins. Co*., 180 S.W.2d 906, 908 (Tex. 1944), quoting 3 C.J.S., *And* § 1068.

As explained in the preceding subsection, a detention facility meets the ordinary dictionary definition of "home" in that it is a "dwelling place" for detainees. To some however, the term "home" may have an emotional connotation that would be lacking in a detention facility. Nevertheless, by using the disjunctive "or" between "home" and "residence," such that a mere "residence" will suffice, the Legislature made clear that an emotional

component is not required.  Even if a "home" might be where the heart is, a "residence" is simply a place where one lives for some time.

**E.      Uniform and consistent application of the Comptroller rule supports GEO.**

Statutes and rules must be given a "consistent and harmonious meaning" and have a "uniform application." *Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164, 169, 170 (Tex. App. - Austin 1997, no pet.).  A case in point is *Tyler Pipe*, in which this Court determined the scope of the undefined requirement of "actual" manufacturing.  *Sharp v. Tyler Pipe Industries, Inc.*, 919 S.W.2d 157 (Tex. App. - Austin 1996, writ denied).  First, this Court reviewed the dictionary definition of the term:

> "Actual" is defined simply as "existing in fact or reality:  really acted ... or carried out ... [as] distinguished from apparent and nominal....  Something that ... exists in fact:  reality."   Webster's Third New International Dictionary 22 (Philip B. Gove ed., 1986).

*Id*. at 160.  Second, this Court reviewed analogous applications of the term:

> The way Tyler Pipe uses its mold-making equipment is analogous to the way a camera produces a photograph and the way a printing press produces a written publication.

*Id.* at 161.   From this analysis, the Court concluded that the Comptroller's application of "actual" manufacturing to mold-making equipment was unreasonable and inconsistent with the Comptroller's treatment of other comparable equipment.  Hence, the Court was not constrained by the rule of strict construction. *Id*. at 161.

The Court should apply a similar comparative analysis in this case. One analogous situation is a nursing home, which is acknowledged in the Comptroller's own Rule 3.295:

> (6) Residential use--Use in a family dwelling or in a multifamily apartment complex or housing complex or <u>nursing home</u> or in a building or portion of a building occupied as a home or residence when the use is by the owner of the dwelling, apartment, complex, home, or building or part of the building occupied…

34 Tex. Admin. Code § 3.295(a)(6) (West 2015) (emphasis added). The Comptroller's determination that residential use occurs in nursing homes is significant because nursing homes can be like detention facilities in that the residents may be involuntarily committed:

```
Q   Okay.  With regard to nursing homes, where some
occupants are involuntarily committed, does that fact
preclude the nursing home from qualifying for the
residential use exemption?
    A   No.  It does not.
```

CR 218 (Plaintiff's Motion Exhibit C - McAnnally Deposition at 92).

Another example of a residence is a dormatory:

```
Q   Would a dormitory at a private college or
boarding school qualify for the residential use exemption?
    A   Yes.
```

CR 221 (Plaintiff's Motion Exhibit C - McAnnally Deposition at 101). These examples illustrate that a detention facility is a "home" or "residence."

## III. The Comptroller's interpretation is unworkable and unreasonable.

### A. The Comptroller offers no clear, positive definition.

The Comptroller's interpretation is unworkable and unreasonable in part because the Comptroller's pleadings never state a clear, positive definition of what constitutes a "home or residence." The Comptroller only tells the Court what a "home or residence" is not – it is not a detention facility. The closest the Comptroller comes to a definition is the final statement in its Motion for Summary Judgment:

> Instead, "home or residence" is more naturally a collection of near-synonyms describing the general idea of one's castle, whether it be a house, duplex, apartment, condominium, etc. where one enjoys the rights that prisoners lack.

CR 250 (Defendants' Motion at 8).

It almost goes without saying that the "general idea of one's castle" is so vague as to be useless. A general idea based on an ancient adage is no way to provide meaningful guidance to taxpayers. What is the idea and how generally should it be applied? Presumably, a moat is not required, but what is required?

### B. The Comptroller's negative definition fails to provide meaningful guidance.

And the negative part of the definition, "where one enjoys the rights that prisoners lack," also fails to provide meaningful guidance to taxpayers. For example, in an office building, one may enjoy the rights that prisoners lack, but that does not make an office building a home or residence. The Comptroller

provides no definitive positive attributes to determine whether a building is a home or residence.

## C. The Comptroller's negative attributes cannot be uniformly and consistently applied.

The ultimate test is whether the Comptroller's justifications for excluding detention facilities can be uniformly and consistently applied. If they cannot, they must be rejected as unreasonable. *See Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164, 169, 170 (Tex. App. - Austin 1997, no pet.). The Comptroller lists three negative attributes:

- "If you don't have that right [against unreasonable search and seizure], you don't live in a home or residence."

- "If you can't leave, you don't live in a home or residence."

- "If you can't exclude others, you don't live in a home or residence."

CR 248-49 (Plaintiff's Motion at 6-7). Each of these negative attributes proves to be unsatisfactory.

### 1. Search and seisure.

The notion that residence should be determined by prohibitions in the Fourth Amendment and in the Texas Constitution against unreasonable search and seizure is a novel one. There is no precedent and no legislative history to support the argument that terms used in this statutory sales tax exemption should

be based on constitutional doctrines, particularly when the statutory terms are not even used in the constitutional texts. The constitutional provisions state:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

Tex. Const. art. 1, § 9.

Neither of these constitutional restrictions on governmental intrusion use the terms "home" or "residence," and there is no indication that the Legislature had the prohibitions on governmental intrusion in mind when it drafted the sales tax exemption.

In other contexts, the Texas Legislature has recognized that detention facilities can be residential in nature. So, if the Comptroller's interpretation were to be adopted by this Court, the notions of "residential" use and "residence" would not be consistently applied in the statutes:

> (2) "Facility" means a <u>residential</u> facility for the placement of juveniles for periods up to one year in length.

Tex. Human Res. Code § 63.001 (West 2009) (emphasis added).

> (13) "Secure correctional facility" means any public or private <u>residential</u> facility, including an alcohol or other drug treatment facility, that:

(A) includes construction fixtures designed to physically restrict the movements and activities of juveniles or other individuals held in lawful custody in the facility; and

(B) is used for the placement of any juvenile who has been adjudicated as having committed an offense, any nonoffender, or any other individual convicted of a criminal offense.

(14) "Secure detention facility" means any public or private <u>residential</u> facility that:

(A) includes construction fixtures designed to physically restrict the movements and activities of juveniles or other individuals held in lawful custody in the facility; and

(B) is used for the temporary placement of any juvenile who is accused of having committed an offense, any nonoffender, or any other individual accused of having committed a criminal offense.

Tex. Fam. Code § 51.02 (13) and (14) (West 2014) (emphasis added).

The Comptroller's reliance on search and seisure law is also unreasonable because its application would be impractical. For example, the Comptroller has offered no authority that prisoners lack search and seizure rights under Texas constitional standards, which may be different than federal standards. *See Muniz v. State*, 852 S.W.2d 520, 521 (Tex. Crim. App. 1993) ("analysis of search issues under the State Constitution may well be different than one conducted pursuant to federal constitutional law"). Thus, if the Court were to adopt the Comptroller's methodology, the Court would have to initially decide as a matter of first impression whether the detainees, some of whom have not been convicted of crimes, have any search and seisure rights under the Texas

Constitution. Only after the Court determined constitutional search and seisure law could it apply tax law.

Furthermore, absurd results are to be avoided. *Southwestern Bell Telephone Company Co. v. Public Utility Commission*, 31 S.W.3d 631, 640 (Tex. App. - Austin 2000, *aff'd,* 92 S.W.3d 424 (2002). A convicted criminal serving a sentence under house arrest, and a probationer who agreed to warrantless searches, would be unable to claim the electricity exemption, even though they would be occupying buildings that by all other accounts would be their home or residence. *See United States v. Knights*, 534 U.S. 112 (2001) (warrantless search of probationer's apartment upheld). This cannot be the law.

### 2. Involuntary confinement.

The Comptroller says: "If you can't leave, you don't live in a home or residence." CR 248 (Plaintiff's Motion at 6). This standard cannot be consistently applied because the Comptroller's own rule recognizes nursing homes as residences, but the residents of a nursing home may be involuntarily committed. The Texas Health and Safety Code even authorizes the use of restraints and seclusion, which may be the ultimate form of involuntary confinement. *See* Tex. Health & Safety Code Ch. 322 (West 2005). Nevertheless, nursing homes qualify for the residential use exemption:

```
Q   Okay.  With regard to nursing homes, where some
occupants are involuntarily committed, does that fact
preclude the nursing home from qualifying for the
residential use exemption?
A   No.  It does not.
```

CR 218 (Plaintiff's Motion Exhibit C - McAnnally Deposition at 92).

### 3.    The right to exclude others.

The Comptroller says "If you can't exclude others, you don't live in a home or residence."   CR 249 (Plaintiff's Motion at 7).   However, nursing homes may provide the occupant no right to exclude others.  Needless to say, if the occupant of the nursing home is being legally restrained, the occupant has no right to exclude others.  *See* Tex. Health & Safety Code Ch. 322 (West 2005). Yet Comptroller's own rule recognizes nursing homes as residences.  So this distinction cannot be consistently applied.

### D.    The residence does not have to be occupied by the owner or tenant.

Finally, the Comptroller makes a statutory construction argument that the residence has to be occupied by the owner or tenant:

> In any event, the text of the statute specifies that the user and occupier are the same person – in this case, the prisoner, not the warden or the manager or the owner of the prison.

CR 282 (Defendants' Response at 5).  However, the Comptroller has to delete words from the statute in order to limit the exemption to direct occupancy:

> (c)    In this section, "residential use" means use:

> (1) in a family dwelling or in a multifamily apartment or housing complex or building or in a part of a building occupied as a home or residence ~~when the use is~~ by the owner of the dwelling, apartment, complex, or building or part of the building occupied; or

Tex. Tax Code §151.317(c)(1) (West 2015) (emphasis added).

In addition, the Comptroller's direct occupancy argument is invalid because it contradicts the Comptroller's own administrative rule. *See Zimmer US, Inc. v. Combs*, 368 S.W.3d 579, 586 (Tex. App. – Austin 2012, no pet.) (holding that if an agency does not follow its own regulation, the Court must reverse its action as arbitrary and capricious). Comptroller Rule 3.295(a)(6) specifically identifies the use of utilities in a nursing home as a residential use by the owner. *See* 34 Tex. Admin. Code 3.295(a)(6) (defining "residential use" to include "use in a … nursing home … when the use is by the owner"). But the owner of a nursing home is not the occupier of the nursing home. Clearly, under the Comptroller's adopted interpretation of the statute, residential use of a space by the owner of the space includes allowing others to reside in the space. And such use may be pursuant to a business arrangement:

```
     Q    And as we saw in the rule, nursing homes are
exempt for residential use.
     A    Correct.
     Q    And a nursing home is a business.
     A    Yes.  And --
```

CR 204 (Plaintiff's Motion Exhibit C - McAnnally Deposition at 36).

Several other examples illustrate the fallacy of the Comptroller's interpretation. Suppose, for example, a parent buys a West Campus condominium for a child attending the University of Texas. The condominium is a residence used by the owner even though the owner does not occupy the condominium. The Comptroller counters that the child is a tenant of the parent and thus occupancy is by the tenant. CR. 282-83 (Defendant's Reply at 5-6). However, there is no tenancy because there is no contract between the parent and child giving the child the right to occupy the condominium. *See* CR 206 (Black's Law Dictionary definition of "tenant").

And if a tenancy could be created without a right of possession, the Comptroller's explanation would still be unworkable. Suppose a person has a second home on the lake and allows friends to stay at the home for a weekend. This scenario does not create a tenancy, but if it did, the tenancy would be for less than 29 days. So under the Comptroller's twisted reasoning, the second home would not qualify for the residential use exemption. The only reasonable interpretation of the statute is that "use" extends beyond to direct occupancy. An owner can "use" a building by residing there or authorizing anyone else to reside there.

## CONCLUSION

Because the statute does not define "home or residence," the Comptroller may have had some initial flexibility in choosing a different, reasonable interpretation of the statute. *See Zimmer US, Inc. v. Combs*, 368 S.W.3d 579, 586 (Tex. App. - Austin 2012, no pet.). However, having exercised its discretion by adopting a rule designating nursing homes as examples of residences, "the Comptroller is obliged to follow that interpretation." *Id*. And the Comptroller must adopt a "uniform application" of its rules. *Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164, 170 (Tex. App. - Austin 1997, no pet.).

Detention facilities are not identical to nursing homes. But they do not have to be identical to be comparable for sales tax purposes. *E.g.*, *Sharp v. Tyler Pipe Industries, Inc.*, 919 S.W.2d 157, 160 (Tex. App. - Austin 1996, writ denied) (mold making equipment compared to cameras and printing presses). The Comptroller cannot deny the exemption for detention facilities based on characteristics that also apply to nursing homes. Because the relevant characteristics of GEO's detention facilities are comparable to nursing homes, the detention facilities must also be characterized as residences as a matter of law. *See, e.g.*, *Zimmer US, Inc. v. Combs*, 368 S.W.3d 579, 587 (Tex. App. - Austin 2012, no pet.) (reversed and rendered as a matter of law).

Ironically, the Comptroller's Motion for Summary Judgment states: "But although prisoners reside in prisons, they do not occupy prisons as a home or residence." CR 248 (State's Motion at 6). "This argument presents us with the age-old challenge of determining whether something that looks like a duck, quacks like a duck, and walks like a duck is nevertheless a chicken." *Greater New Braunfels Home Builders Ass'n v. City of New Braunfels*, 240 S.W.3d 302, 308 at n. 6 (Tex. App. - Austin 2007, pet. denied) (finding that a duck was a duck). Common usage has seeped into the Comptroller's pleading, revealing that the Comptroller is swimming against the current of common sense. Most people would say that the place where one resides is one's residence. So should the Court.

For these reasons, the Court should reverse the Order of the District Court, find as a matter of law that the use of electricity and gas at the detention facilities operated by Plaintiff during the relevant period included residential use under Texas Tax Code Section 151.317, and remand to the District Court for a determination of the amount of tax remitted on the gas and electricity used for residential purposes and any other proof needed to validate Plaintiff's claim for relief. *See* CR 277 (Proposed Order).

Respectfully submitted,

Scott Douglass & McConnico LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701-2589
(512) 495-6300
(512) 495-6399 Fax


By _____/s/ *Ray Langenberg*_____
      Ray Langenberg
      State Bar No. 11911200
      rlangenberg@scottdoug.com
      Eric Hagenswold
      State Bar No. 24002205
      ehagenswold@scottdoug.com

      ATTORNEYS FOR APPELLANT

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all counsel of record, as listed below, through the electronic filing system and e-mail on December 29, 2015:

Charles Eldred
P.O. Box 12548
Austin, TX 78711-2548
512 475-1743
charles.eldred@texasattorneygeneral.gov


      /s/ *Ray Langenberg*_____
      Ray Langenberg

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing instrument was prepared using Microsoft Word 2010, and that, according to its word-count function, the sections of the foregoing pleading covered by TRAP 9.4(i)(1) contain 4,826 words.

_/s/ Ray Langenberg_

Ray Langenberg

## APPENDIX

Filed in The District Court
of Travis County, Texas

NOV 12 2015

At _____ 3:20 P.M.

Velva L. Price, District Clerk

No. D-1-GN-09-002855

| | | |
|---|---|---|
| The GEO Group, Inc.,<br>Plaintiff, | ' | In the District Court of |
| | ' | |
| v. | ' | |
| | ' | Travis County, Texas |
| Glenn Hegar, Comptroller of<br>Public Accounts of the State of<br>Texas, and Ken Paxton, Attorney<br>General of the State of Texas,<br>Defendants. | '<br>'<br>'<br>' | |
| | ' | 126th Judicial District |

## Order

On October 21, 2015, the Court heard Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment. After considering the pleadings, evidence, and arguments of counsel, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Motion for Partial Summary Judgment.

This is a final, appealable order. This case is dismissed. Plaintiff shall take nothing by this suit.

Date: November 12, 2015 _____

_Lora J. Livingston_

_____

Lora J. Livingston
Judge, 261st District Court

004306196

**Plaintiff's Appendix 1**

286

Approved as to form:

_____
Ray Langenberg
Attorney for Plaintiff

_____
Charles K. Eldred
Attorney for Defendants

Texas Statutes

Tax Code

Title 2. State Taxation

Subtitle E. Sales, Excise, And Use Taxes

Chapter 151. Limited Sales, Excise, And Use Tax

Subchapter H. Exemptions

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

### § 151.317. Gas And Electricity

(a)

 Subject to Sections 151.1551, 151.359, and 151.3595 and Subsection (d) of this section, gas and electricity are exempted from the taxes imposed by this chapter when sold for:

(1)

 residential use;

(2)

 use in powering equipment exempt under Section 151.318 or 151.3185 by a person processing tangible personal property for sale as tangible personal property, other than preparation or storage of prepared food described by Section 151.314(c-2);

(3)

 use in lighting, cooling, and heating in the manufacturing area during the actual manufacturing or processing of tangible personal property for sale as tangible personal property, other than preparation or storage of prepared food described by Section 151.314(c-2);

(4)

 use directly in exploring for, producing, or transporting, a material extracted from the earth;

(5)

 use in agriculture, including dairy or poultry operations and pumping for farm or ranch irrigation;

(6)

 use directly in electrical processes, such as electroplating, electrolysis, and cathodic protection;

(7)

 use directly in the off-wing processing, overhaul, or repair of a jet turbine engine or its parts for a certificated or licensed carrier of persons or property;

(8)

 use directly in providing, under contracts with or on behalf of the United States government or foreign governments, defense or national security-related electronics, classified intelligence data processing and handling systems, or defense-related platform

**Plaintiff's Appendix 2**

modifications or upgrades;

(9)

 use directly by a data center or large data center project that is certified by the comptroller as a qualifying data center under Section 151.359 or a qualifying large data center project under Section 151.3595 in the processing, storage, and distribution of data;

(10)

 a direct or indirect use, consumption, or loss of electricity by an electric utility engaged in the purchase of electricity for resale; or

(11)

 use in timber operations, including pumping for irrigation of timberland.

(b)

 The sale, production, distribution, lease, or rental of, and the use, storage, or other consumption in this state of, gas and electricity sold for the uses listed in Subsection (a), are exempted from the taxes imposed by a municipality under Chapter 321 except as provided by Sections 151.359(j) and 321.105.

(c)

 In this section, "residential use" means use:

(1)

 in a family dwelling or in a multifamily apartment or housing complex or building or in a part of a building occupied as a home or residence when the use is by the owner of the dwelling, apartment, complex, or building or part of the building occupied; or

(2)

 in a dwelling, apartment, house, or building or part of a building occupied as a home or residence when the use is by a tenant who occupies the dwelling, apartment, house, or building or part of a building under a contract for an express initial term for longer than 29 consecutive days.

(d)

 To qualify for the exemptions in Subsections (a)(2)-(9), the gas or electricity must be sold to the person using the gas or electricity in the exempt manner. For purposes of this subsection, the use of gas or electricity in an exempt manner by an independent contractor engaged by the purchaser of the gas or electricity to perform one or more of the exempt activities identified in Subsections (a)(2)-(9) is considered use by the purchaser of the gas or electricity.

(e)

 Natural gas or electricity used during a regular monthly billing period for both exempt and taxable purposes under a single meter is totally exempt or taxable based on the predominant use of the natural gas or electricity measured by that meter. The comptroller may prescribe by rule the procedures by which a purchaser must establish the predominant use of the natural gas or electricity.

**Cite as Tex. Tax Code § 151.317**

**History.** Amended by Acts 2015, Texas Acts of the 84th Leg. - Regular Session, ch. TBD, Sec. 2, eff. 6/10/2015.

Amended by Acts 2013, 83rd Leg. - Regular Session, ch. 1274, Sec. 2, eff. 9/1/2013.

Amended By Acts 2011, 82nd Leg., R.S., Ch. 225, Sec. 6, eff. September 1, 2011.

Amended By Acts 2003, 78th Leg., ch. 1310, Sec. 104, 105, eff. Oct. 1, 2003.

Amended By Acts 1999, 76th Leg., ch. 631, Sec. 15, eff. Oct. 1, 2001

Amended By Acts 2001, 77th Leg., ch. 1263, Sec. 21, eff. Oct. 1, 2001

Amended By Acts 1999, 76th Leg., ch. 1467, Sec. 2.18, eff. Oct. 1, 1999

Amended By Acts 1997, 75th Leg., ch. 1040, Sec. 21, eff. Sept. 1, 1997

Amended By Acts 1995, 74th Leg., ch. 1000, Sec. 16, eff. Oct. 1, 1995

Amended by Acts 1987, 70th Leg., ch. 411, Sec. 1, eff. Oct. 1, 1987

Acts 1981, 67th Leg., p. 1563, ch. 389, Sec. 1, eff. Jan. 1, 1982.

Amended By Acts 1987, 70th Leg., 2nd C.S., ch. 5, art. 1, pt. 4, Sec. 25

**Related Legislative Provision:** *See Acts 2013, 83rd Leg. - Regular Session, ch. 1274, Sec. 7.*

**Texas Administrative Code**

**Title 34. PUBLIC FINANCE**

**Part 1. COMPTROLLER OF PUBLIC ACCOUNTS**

**Chapter 3. TAX ADMINISTRATION**

**Subchapter O. STATE AND LOCAL SALES AND USE TAXES**

*Current through Vol. 40, Issue 49; 12/4/2015*

**§ 3.295. Natural Gas and Electricity**

(a)

Definitions. The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

(1)

Electric utility--Any entity owning or operating for compensation in this state equipment or facilities for producing, generating, transmitting, distributing, selling, or furnishing electricity whose rates for the sale of electric power are set by the Public Utilities Commission under the Public Utility Regulatory Act. The term does not include:

(A)

a qualifying small power producer or qualifying co-generator, as defined in the Federal Power Act, §3(17)(D) and §3(18)(C), as amended ( 16 United States Code § 796(17)(D) and §   796(18)(C) ); or

(B)

any person not otherwise a public utility that owns or operates in this state equipment or facilities for producing, generating, transmitting, distributing, selling, or furnishing electric energy to an electric utility, if the equipment or facilities are used primarily for the production and generation of electric energy for the person's own consumption.

(2)

Fabrication--To make, build, create, produce, or assemble components of tangible personal property, or to make tangible personal property work in a new or different manner.

(3)

Manufacturing--Every operation commencing with the first stage of production of tangible personal property and ending with the completion of tangible personal property. The first production stage means the first act of production and it does not include acts in preparation for production. For example, a manufacturer gathering, arranging, or sorting raw material or inventory is preparing for production. When production is completed, maintaining the life of tangible personal property or preventing its deterioration is not a part of the manufacturing process. Tangible personal property is complete when it has the physical properties, including packaging, if any, that it has when transferred by the manufacturer to another. Also see §   3.300 of this title (relating to Manufacturing; Custom Manufacturing; Fabricating; Processing).

(4)

Remodeling--To make tangible personal property belonging to another over again without causing a loss of its identity, or without causing the property to work in a new or different manner.

(5)

# Plaintiff's Appendix 3

Processing--The physical application of the materials and labor necessary to modify or to change the characteristics of tangible personal property. The property being processed may belong either to the processor or the customer, the only tests being whether the property is processed and whether it will ultimately be sold. Direct use of natural gas or electricity in processing will be referred to as exempt use. Processing does not include remodeling or any action taken to prolong the life of tangible personal property or to prevent a deterioration of the tangible personal property being held for sale. The repair of tangible personal property belonging to another by restoring it to its original condition is not considered processing of that property. The mere packing, unpacking, or shelving of a product to be sold will not be considered to be processing of that product.

(6)

Residential use--Use in a family dwelling or in a multifamily apartment complex or housing complex or nursing home or in a building or portion of a building occupied as a home or residence when the use is by the owner of the dwelling, apartment, complex, home, or building or part of the building occupied. Residential use also includes use in a dwelling, apartment, complex, house, or building or part of a building occupied as a home or residence when the use is by a tenant who occupies the dwelling, apartment, complex, house, or building or part of a building under a contract for an express initial term of more than 29 consecutive days. Absent a contract, only the period exceeding 29 consecutive days will be considered residential use, when supported by valid documentation (i.e., receipts, canceled checks, etc.). For purposes of the exemption for residential use of natural gas and electricity, nursing homes qualify for exemption only for periods beginning after December 31, 1987.

(b)

Sales tax applicable. The furnishing of natural gas or electricity is a sale of tangible personal property. All the provisions in the Tax Code, Chapter 151, applying to the sale of tangible personal property, apply to the sale of natural gas or electricity.

(c)

Gas and electricity are exempted from the taxes imposed by this chapter when sold for:

(1)

residential use;

(2)

use in agriculture, including dairy or poultry operations and pumping for farm or ranch irrigation;

(3)

direct or indirect use or consumption, including electricity lost in the lines, by an electric utility engaged in the purchase of electricity for resale;

(4)

direct use in:

(A)

powering equipment that qualifies for exemption under Tax Code, § 151.318, (including equipment that is permanently affixed to or incorporated into realty) to process tangible personal property for sale as tangible personal property, other than preparation of or the storage of food for immediate consumption;

(B)

lighting, cooling and heating in the manufacturing area during the actual manufacturing or processing of tangible personal property for sale as tangible personal property, other than preparation or storage of food for immediate consumption;

(C)

exploring for, producing, or transporting a material extracted from the earth;

(D)

electrical processes, such as electroplating, electrolysis, and cathodic protection;

(E)

the off-wing processing, overhaul, or repair of a jet turbine engine or its parts for a certificated or licensed carrier of persons or property; or

(F)

providing, under contract with or on behalf of the United States government or foreign governments, defense or national security-related electronics, classified intelligence data processing and handling systems, or defense-related platform modifications or upgrades;

(G)

the repair, maintenance, or restoration of rolling stock.

(d)

Use of gas or electricity in an exempt manner by an independent contractor engaged by the purchaser of the gas or electricity to perform one or more of the activities described in subsection (c)(4) of this section is considered use by the purchaser of the gas or electricity.

(e)

Predominant use.

(1)

Natural gas or electricity used during a regular monthly billing period for both exempt and taxable purposes under a single meter is totally exempt or taxable based upon the predominant use of the natural gas or electricity measured by that meter. A person who performs a processing, manufacturing, or other exempt function continually must establish predominant use on 12 consecutive months of use.

(2)

If, in the regular course of business, a person performs a processing, manufacturing, or other exempt function only part of the year and a nonprocessing, nonmanufacturing, or other taxable function for the remainder of the year, the predominant use may be established for that period of time the processing, manufacturing, or other exempt function occurs based on the predominant use during that period.

(3)

When determining the predominant use of natural gas or electricity, utilities used to operate machinery exempt under subsection (c)(4)(A) of this section and for lighting, cooling, and heating in the manufacturing area during actual manufacturing or processing of tangible personal property for sale are exempt. Gas and electricity used to operate lighting, cooling, and heating in manufacturing support areas are taxable. Manufacturing support areas include, but are not limited to, storage, engineering, office and accounting areas, research and development, and break, eating, and restroom facilities. Utilities used in an area open to the public for the purpose of marketing a product ready for sale are taxable. Utilities used to operate other nonproduction machinery or equipment are taxable.

(f)

Determining predominant use: utility studies.

(1)

Persons claiming a sales tax exemption because the predominant use of natural gas and electricity through a single meter is for processing, manufacturing, fabricating, or other nontaxable use must have performed a utility study to establish this predominant exempt use. The study must list all uses of the utility, both exempt and taxable, the times of usage, the energy used, and whether the use was taxable or exempt. Twelve consecutive months of utility usage must be a part of the study. The kilowatt rating or BTU rating, duty factor, where needed for cycling equipment, and electrical or natural gas computations must be certified by a registered engineer or a person with an engineering degree from an accredited engineering college. The owner of the business must certify that all items using natural gas or electricity (depending on which utility is covered by the study) are listed and that the hours of use for each item are correct. The certification of both the engineer and the owner must appear on the face of the study. If the owner of the business appoints an agent to act on the owner's behalf, the power of attorney must clearly state that the agent is attempting to qualify the principal for a sales tax exemption, and if a refund of sales tax is involved, the power of attorney must also state that a sales tax refund will be made by the state through the utility company. A person in business less than 12 consecutive months may still apply for a sales tax exemption if a registered engineer or a person with an engineering degree performs a study based upon projected uses which shows the predominant use as exempt. A person claiming an exemption based upon estimated use must be able to support the claimed exemption with a study of actual use after 12 consecutive months of operation if so requested by the comptroller.

(2)

The study must be completed and on file at the location of the person claiming the exemption at the time an exemption certificate is submitted to the utility company. Without the study, the claim for exemption will be presumed to be invalid. Persons obtaining a sales tax refund without a valid study will be assessed tax, penalty, and interest by the comptroller on the full amount of the refund, if the exemption is not proved. If the exemption certificate is fully completed with all information required by this section and bears an original seal of a registered engineer or is attached to a signed statement with an original signature from the owner of the business and a person with an engineering degree from an accredited engineering college, as required by paragraph (1) of this subsection, the utility company is not required to make any additional inquiry before honoring the exemption request.

(3)

The comptroller may request a copy of the study for review, either before or after the sales tax exemption is granted. Neither the comptroller by reviewing a study nor the utility company by accepting an exemption certificate is confirming the study's accuracy. Tax, penalty, and interest will be assessed on the business owner if the study is proven to be incomplete or inaccurate to the extent that the predominant use of the natural gas or electricity is taxable.

(4)

If a sales tax refund is being claimed retroactively, the study must take into account any changes in equipment or other items using utilities, any changes in business activities, and any changes in square footage being served by the meter.

(5)

This subsection does not apply to persons whose use of natural gas or electricity is for processing, manufacturing, or other exempt function if an industry-wide study for that particular industry reflects that the natural gas or electricity used would always qualify as exempt use. The industry-wide study must be submitted to the comptroller's office for review and approval. A subsequent study may be required, in the future, if factors relative to the original study change.

(g)

Exemption certificates.

(1)

Exempt users must issue exemption certificates to the utility company to claim a sales tax exemption or to obtain a refund of sales tax. The exemption certificate must be specific as to the reason for the claimed exemption. For example, if a person is claiming that the predominant use of the utility is for processing, the reason for the exemption must state, "A valid and complete study has been performed which shows that (insert the actual exempt percentage) of the natural gas or electricity is for processing tangible personal property for sale in the regular course of business."

(2)

The exemption is valid only as long as the person continues to use natural gas and electricity in a manner which is for predominantly exempt purposes. At the time the uses of the utilities change so that the predominant use is taxable, it is the person's responsibility to immediately notify the utility company in writing that the exemption is no longer valid.

(3)

Persons whose use of natural gas or electricity is solely in family dwellings will not be required to furnish exemption certificates.

(4)

A person whose use of natural gas and electricity is in multifamily apartment complexes, housing complexes, nursing homes, or other residential buildings may be required to issue an exemption certificate if one is necessary for the utility company to distinguish exempt residential use from taxable use.

(h)

Transportation of a material extracted from the earth.

(1)

Sales or use tax is not due on natural gas or electricity used to transport a material or its components extracted from the earth. Examples of materials or components extracted from the earth would be oil, natural gas, coal or coal slurry, crushed stone, sand and gravel, and water.

(2)

Sales or use tax is due on natural gas or electricity used to transport a product which was manufactured from a material extracted from the earth. Products which were manufactured from a material extracted from the earth include substances which do not exist in nature or are not components of crude oil, natural gas, coal, or other minerals extracted from the earth.

(3)

A material will not be considered to be manufactured when an additive is combined with a material for ancillary reasons, for example, odorant added to natural gas.

(i)

Pipeline safety fees. Sales or use tax is not due on any surcharge for pipeline safety fees added to the existing rates of each investor-owned and municipally owned natural gas distribution company and each natural gas master meter operator pursuant to Texas Utilities Code, §   121.211.

**Cite as 34 Tex. Admin. Code § 3.295**

**History.** The provisions of this §3.295 adopted to be effective January 1, 1976; amended to be effective October 25, 1978, 3 TexReg 3571; amended to be effective November 26, 1984, 9 TexReg 5836; amended to be effective February 9, 1987, 12 TexReg 311; amended to be effective February 1, 1988, 13 TexReg 348; amended to be effective January 1, 1990, 14 TexReg 6675; amended to be effective June 25, 1991, 16 TexReg 3195; amended to be effective March 7, 1996, 21 TexReg 1583; amended to be effective September 20, 2000, 25 TexReg 9220; amended to be effective April 13, 2005, 30 TexReg 2082

Black's Law Dictionary (10th ed. 2014), home

HOME

Bryan A. Garner, Editor in Chief

Preface | Guide | Legal Abbreviations

**home** (bef. 12c) A dwelling place.

- **family home** A house that was purchased during marriage and that the family has resided in, esp. before a divorce. • In some jurisdictions, the court may award the family home to the custodial parent until (1) the youngest child reaches the age of 18 or is otherwise emancipated, (2) the custodial parent moves, or (3) the custodial parent remarries. In making such an award, the court typically reasons that it is in the best interests of the child to remain in the family home. — Also termed *marital home*; *marital residence.*

- **manufactured home** (1973) *Secured transactions.* A structure, transportable in one or more sections, that when traveling is 8 body feet or more in width or 40 body feet or more in length, or, when erected on site, is 320 or more square feet, and that is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and that has within it plumbing, heating, air-conditioning, and electrical systems. UCC § 9-102(a)(53).

- **matrimonial home** See *matrimonial domicile* under DOMICILE.

- **tax home** See TAX HOME.

Black's Law Dictionary (10th ed. 2014), residence

RESIDENCE

Bryan A. Garner, Editor in Chief

Preface | Guide | Legal Abbreviations

**residence** (14c)   **1.** The act or fact of living in a given place for some time <a year's residence in New Jersey>. — Also termed *residency.* **2.** The place where one actually lives, as distinguished from a domicile <she made her residence in Oregon>. • *Residence* usu. just means bodily presence as an inhabitant in a given place; *domicile* usu. requires bodily presence plus an intention to make the place one's home. A person thus may have more than one residence at a time but only one domicile. Sometimes, though, the two terms are used synonymously. Cf. DOMICILE (2). **3.** A house or other fixed abode; a dwelling <a three-story residence>. **4.** The place where a corporation or other enterprise does business or is registered to do business <Pantheon Inc.'s principal residence is in Delaware>.

- **habitual residence** (18c)   **1.** *Family law.* A person's customary place of residence; esp., a child's customary place of residence before being removed to some other place. • The term, which appears as an undefined term in the Hague Convention, is used in determining the country having a presumed paramount interest in the child. **2.** *Copyright.* An established place, esp. a country, in which one lives for the long term, usu. without being a citizen of the place. • The Berne Convention makes habitual residence an alternative to legal domicile in a member country to qualify for copyright protection but leaves the exact definition of the term to member countries.

Westlaw. © 2014 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

# Plaintiff's Appendix 4

WestlawNext® © 2015 Thomson Reuters. No claim to original U.S. Government Works.