# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00178-CV

**Zimmer US, Inc., Appellant**

**v.**

**Susan Combs, Comptroller of Public Accounts of the State of Texas; and
Greg Abbott, Attorney General of the State of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-09-002096, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

In this suit for a refund of use taxes paid on out-of-state purchases of certain surgical instruments, appellant Zimmer US, Inc. appeals from the trial court's order denying its motion for summary judgment and granting summary judgment in favor of appellees, Susan Combs, Comptroller of Public Accounts, and Greg Abbott, Attorney General of the State of Texas (collectively, "the Comptroller"). *See* Tex. Tax Code Ann. § 112.151 (West 2008); *see also id.* § 112.154 (West 2008). Zimmer asserts that the instruments are orthopedic devices or, alternatively, supplies for orthopedic devices and are therefore exempt from use tax under section 151.313(a)(5) of the Texas Tax Code and section 3.284(a) of the Texas Administrative Code ("rule 3.284"). *See* Tex. Tax Code Ann. § 151.313(a)(5) (West 2008); 34 Tex. Admin. Code § 3.284(a)(1) (2011) (Tex. Comptroller of Pub. Accounts, Drugs, Medicines, Medical Equipment, & Devices (Tax Code § 151.313)). Because we have determined

that the instruments are exempt under section 151.313(a)(5) and rule 3.284(a), we reverse the trial court's judgment and render summary judgment in favor of Zimmer.

**BACKGROUND**

Zimmer markets and sells reconstructive implants to hospitals and healthcare providers in Texas.[1] Zimmer also develops techniques for surgical procedures to implant these prosthetics. From its parent company outside Texas, Zimmer purchases surgical instruments and lends them to healthcare providers for use in each procedure. It is these instruments that are the subject of the present tax-refund dispute. According to Zimmer, the instruments are specially designed by product engineers within its parent company for use in each of Zimmer's different surgical procedures. Zimmer asserts that the instruments at issue do not include tools for general surgical or orthopedic purposes. Rather, they are specialized and intended for use in specific orthopedic surgical procedures. For example, the instruments include cutting guides that ensure proper cuts to bone surfaces, "reamers" that prepare bones to accept prostheses, and "provisional" instruments that serve as trial implants by replicating aspects of the eventual prostheses.

After Zimmer learned that the Comptroller considered these instruments taxable, it made a payment to the Comptroller representing the use taxes on the instruments provided in Texas between July 2003 and February 2007. Zimmer then submitted a refund claim to the Comptroller for the portion of the tax that was not barred by limitations, a total of $947,827, plus interest. Specifically, Zimmer claimed that the instruments are exempt from taxation. After

---

[1] It is undisputed that these items are prosthetic devices exempt from the use tax. Also undisputed is the amount of tax Zimmer paid on the instruments at issue in this case.

holding an administrative hearing on the matter, the Comptroller denied Zimmer's claim. *See* Tex. Tax Code Ann. § 111.105 (West 2008) (providing for administrative hearings on tax refund claims). Zimmer then sued the Comptroller for the refund in district court. After the parties filed cross motions for summary judgment, the trial court granted summary judgment in favor of the Comptroller. In this appeal, Zimmer claims that the instruments are exempt from taxation under section 151.313(a)(5) and rule 3.284(a) as either "orthopedic devices" or, alternatively, "supplies . . . for the listed items."

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, the appellate court considers the summary-judgment evidence presented by both sides, determines all questions presented, and if it finds the trial court erred, renders the judgment the trial court should have rendered. *Id.*

Zimmer's arguments are based primarily on the construction of the tax code and the Comptroller's rules, which are legal questions we review de novo. *7-Eleven, Inc. v. Combs*, 311 S.W.3d 676, 683 (Tex. App.—Austin 2010, pet. denied). When resolving an issue of statutory construction, we must first and foremost follow the plain language of the statute. *General Motors Corp. v. Bray*, 243 S.W.3d 678, 685 (Tex. App.—Austin 2007, no pet.). Where statutory language is ambiguous, its construction by an agency charged with its enforcement is entitled to serious consideration so long as it is reasonable and does not contradict the statute's plain language. *See*

3

*Feiss v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006) (explaining that deference is owed to agency regulation interpreting statute only when statute is ambiguous and agency's construction reasonable); *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993). In addition, statutory exemptions from taxation are strictly construed against the taxpayer. *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991); *DuPont Photomasks, Inc. v. Strayhorn*, 219 S.W.3d 414, 421 (Tex. App.—Austin 2006, pet. denied).

Administrative rules are ordinarily construed in the same manner as statutes. *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999); *7-Eleven*, 311 S.W.3d at 683. Unless a rule is ambiguous, we follow the rule's clear language; when there is vagueness, ambiguity, or room for policy determinations in a rule, we defer to the agency's interpretation unless it is plainly inconsistent with the language of the rule. *BFI Waste Sys. of N. Am., Inc. v. Martinez Envtl. Group*, 93 S.W.3d 570, 575 (Tex. App.—Austin 2002, pet. denied).

**DISCUSSION**

The use tax, imposed on the consumption of goods purchased out of state and brought into Texas, is designed "to more evenly distribute the tax burden among all consumers by imposing a tax on the fruits of an interstate purchase as well as on the sale of property in the State." *Bullock v. Lone Star Gas Co.*, 567 S.W.2d 493, 497 (Tex. 1978). The tax serves "to prevent avoidance of a state's sales tax by the purchase of goods in another state, and to place retailers in the state upon equal footing with out-of-state competitors, who are not obligated to

4

collect and remit sales tax." *Bullock v. Foley Bros. Dry Goods Corp.*, 802 S.W.2d 835, 838 (Tex. App.—Austin 1990, writ denied).

Texas Tax Code section 151.313(a)(5) exempts from the use tax "a brace; hearing aid or audio loop; orthopedic, dental, or prosthetic device; ileostomy, colostomy, or ileal bladder appliance; or supplies or replacement parts for the listed items." Tex. Tax Code Ann. § 151.313(a)(5). Charged under section 111.002 of the tax code with adopting rules for the enforcement of the code, the Comptroller has interpreted this exemption in rule 3.284. Subsection (a) of that rule defines various terms from the tax code as follows:

> Appliance or device—An instrument, apparatus, implement, machine, contrivance, implant, chemical, or other similar or related product that does not achieve its primary intended purposes through chemical action within or on the body, and that is not dependent upon being metabolized for the achievement of its primary intended purposes.
>
> . . .
>
> Orthopedic appliance—Any appliance or device designed specifically for use in the correction or prevention of human deformities, defects, or chronic diseases of the skeleton, joints, or spine.
>
> . . .
>
> Prosthetic device—An item that is artificial and replaces a missing part of the body, performs the function of a vital organ or appendage of the human body, or is permanently implanted in the body. Examples of prosthetic devices are heart-lung pumps, nasal gastric and gastrointestinal devices, ureteral stents, urethral stents, and artificial kidney machines, and related components and supplies.

34 Tex. Admin. Code § 3.284(a)(1), (12), (13) (2011).

The sole issue in the present case is whether, in light of this rule, the instruments Zimmer loans to healthcare providers are subject to the exemption in section 151.313(a)(5) of

the tax code. Zimmer claims that the instruments are exempt for two alternate reasons: first, because they are orthopedic devices as the Comptroller has defined that term in rule 3.284, or second, because they are "related components and supplies" for Zimmer's undisputedly exempt prosthetics.[2] Accordingly, Zimmer asks that we reverse the trial court's order denying its motion for summary judgment and granting the Comptroller's.

We first turn to whether the instruments at issue are exempt as orthopedic devices. Zimmer argues that the instruments are exempt under the plain, unambiguous language of rule 3.284(a)(12), which defines "orthopedic appliance." Zimmer states that the instruments are "designed specifically for use in" orthopedic surgeries, which are a part of "the correction or prevention of human deformities, defects, or chronic diseases of the skeleton, joints, or spine." *Id.* Zimmer argues that the instruments are designed specifically for use in particular orthopedic surgical procedures, and because the implantation of prosthetics would be impossible without these procedures, they are part of the "correction" of orthopedic conditions.

Zimmer also argues that the language of rule 3.284(a)(13), defining "prosthetic device," supports its argument. In the rule, the Comptroller expressly defines a "prosthetic device" to be "an item that is artificial and replaces a missing part of the body, performs the function of

---

[2] Section 151.313(a)(5) uses only the language "orthopedic . . . or prosthetic devices" in regard to the exemption at issue in this case, while the defined terms in rule 3.284(a)(12) and (13) are "orthopedic appliance" and "prosthetic device" respectively. However, the words "device" and "appliance" are defined together in rule 3.284(a)(1), and the Comptroller acknowledges that she uses these words interchangeably. For clarity, unless specifically referring to the content of rule 3.284(a)(12), we will use the statutory language of "orthopedic device." *See* Tex. Tax Code Ann. § 151.313(a)(5) (West 2008); 34 Tex. Admin. Code § 3.284(a)(1) (2011) (Tex. Comptroller of Pub. Accounts, Drugs, Medicines, Medical Equipment, & Devices (Tax Code § 151.313)).

a vital organ or appendage of the human body, or is permanently implanted in the body." Zimmer notes that the Comptroller could have included such additional requirements in the definition of "orthopedic appliance" in rule 3.284(a)(12), but did not do so. According to Zimmer, that omission should be considered intentional, and this Court should not second-guess it by reading into "orthopedic appliance" any requirements expressly stated only as to "prosthetic device." *See* Smith v. Baldwin, 611 S.W.2d 611, 616 (Tex. 1980) ("When the Legislature has carefully employed a term in one section of a statute, and has excluded it in another, it should not be implied where excluded."); *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976) (agency rules generally construed in same manner as statutes).

The Comptroller, however, claims that the instruments are not exempt and that the court therefore correctly granted summary judgment in its favor for three reasons. First, the Comptroller argues that the instruments would only be subject to the exemption if they were implanted into the body and supported, corrected, or replaced parts of the body on an ongoing basis, which they do not. These traits are required under section 151.313(a)(5), the Comptroller claims, because they are common to all of the items listed—braces, hearing aids, colostomies, and so forth—and must therefore be read into all of the rules interpreting that section.

Second, the Comptroller notes that this requirement is reflected in years of letter rulings issued to taxpayers. For example, the Comptroller has ruled that bone wire is exempt when it is implanted in the body and non-exempt when it is not. *See, e.g.*, Tex. Comptroller of Pub. Accounts, STAR Document No. 200201747L (issued Jan. 29, 2002); Tex. Comptroller of Pub. Accounts, STAR Document No. 200508245L (issued Sept. 8, 2005). Similarly, the Comptroller

7

has ruled that coronary stents are exempt, while coronary guide wires, catheters, and catheter supplies used during surgery are not. *See* Tex. Comptroller of Pub. Accounts, STAR Document No. 9710965L (issued Oct. 15, 1997); *see also* Tex. Comptroller of Pub. Accounts, STAR Document No. 9008L1038B01 (issued Aug. 24, 1990); Tex. Comptroller of Pub. Accounts, STAR Document No. 9510L1378D11 (issued Oct. 31, 1995) (ruling that kidney dialysis machines are exempt, while accessories for dialysis such as reclining chairs and scales are not). The Comptroller urges that such a longstanding interpretation warrants deferential treatment by this Court. *See USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 495 (Tex. App.—Austin 2004, pet. denied) ("We bear in mind that an administrative agency has the power to interpret its own rules, and its interpretation is entitled to great weight and deference.").

Third, the Comptroller claims that its reading of the exemption comports with the plain language of the rule's definition of "appliance or device." The Comptroller reasons that under this definition, a qualifying item would have to "take effect as a result of, or be affected by, the actions of the human body," which items used exclusively during surgery do not do.

Zimmer contends that we must not defer to the Comptroller's interpretation of rule 3.284(a). Unless a rule is ambiguous, Zimmer stresses, we must follow the plain language of that rule. *See BFI Waste Sys. of N. Am., Inc.*, 93 S.W.3d at 575–76. Zimmer alleges that the interpretation urged by the Comptroller is inconsistent with the plain language of rule 3.284 and therefore, by giving it deference, we would sanction the Comptroller's attempt to amend its rulemaking without adhering to the Texas Administrative Procedure Act (APA). *See* Tex. Gov't Code Ann. §§ 2001.001–.041 (West 2008); *Myers v. State*, 169 S.W.3d 731, 734 (Tex.

8

App.—Austin 2005, no pet.) ("Allowing an agency to create broad amendments to its rules through adjudication, rather than through its rule making authority, effectively undercuts the Administrative Procedures Act.").

We agree that the Comptroller's interpretation of rule 3.284 must be rejected if it contradicts the plain language of a rule that reasonably interprets the tax code. *See Rodriguez*, 997 S.W.2d at 254–55 ("[W]e cannot defer to an administrative interpretation that is 'plainly erroneous or inconsistent with the regulation' . . . . If the [agency] does not follow the clear, unambiguous language of its own regulation, we reverse its action as arbitrary and capricious."). To determine if this is the case, we first determine whether rule 3.284 reasonably interprets section 151.313 of the tax code. *See Feiss*, 202 S.W.3d at 747 (before courts give deference to regulation, statutory language "must be ambiguous" and "agency's construction must be reasonable"). Our first duty is to follow the plain language of the statute. *General Motors Corp.*, 243 S.W.3d at 685. If we find the language to be ambiguous, however, we must give serious consideration to the agency's construction if it is reasonable and does not conflict with that language. *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011).

In this case, the plain language of the statute includes "a brace; hearing aid or audio loop; orthopedic, dental, or prosthetic device; ileostomy, colostomy, or ileal bladder appliance; or supplies or replacement parts for the listed items," without defining any of those terms. The statute is therefore ambiguous to the extent that it leaves undefined terms that may be needed for the Comptroller's administration of the statute. *See generally Office of Pub. Util. Counsel v.*

9

*Public Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied) ("[T]he legislature does not need to include every specific detail or anticipate all unforeseen circumstances."). By adopting rule 3.284(a)(12), the Comptroller has administratively defined the statutory term "orthopedic device" to mean "any appliance or device designed specifically for use in the correction or prevention of human deformities, defects, or chronic diseases of the skeleton, joints, or spine." There is nothing in the tax code that suggests this definition is unreasonable, nor does the Comptroller argue that it is. Accordingly, we hold that rule 3.284 is a reasonable interpretation that does not contradict the tax code's plain language.

Because the interpretation of "orthopedic device" in rule 3.284 is reasonable, the Comptroller is obliged to follow that interpretation. *Myers*, 169 S.W.3d at 734 ("If an agency does not follow the unambiguous language of its own rules, we must consider its actions arbitrary and capricious."); *BFI Waste Sys. of N. Am., Inc.*, 93 S.W.3d at 575 ("Valid agency rules have the same force and effect as statutes."). We must therefore determine whether the requirements now urged by the Comptroller—that exempt items must be implanted or continually used to support or replace a body part—are consistent with the rule. Specifically, we examine (1) whether rule 3.284 is ambiguous, and (2) if so, whether the interpretation now urged by the Comptroller contradicts the plain language of that rule. *BFI Waste Sys. of N. Am., Inc.*, 93 S.W.3d at 575–76. We hold that the rule is not ambiguous, but even if it were, the Comptroller's position that "an orthopedic appliance or device must perform some function in the actual ongoing correction or prevention of human deformities" would contradict its plain language.

The rule at issue leaves no major terms undefined, and it includes very specific lists such as "human deformities, defects, or chronic diseases of the skeleton, joints, or spine."

10

The inclusion of the phrase "artificial and replaces a missing part of the body, performs the function of a vital organ or appendage of the human body, or is permanently implanted in the body" in only the definition of "prosthetic device" makes clear that those requirements were not meant to apply to "orthopedic appliances." *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("[E]very word excluded from a statute must . . . be presumed to have been excluded for a purpose. Only when it is necessary to give effect to the clear legislative intent can we insert additional words or requirements into a statutory provision."); *Lewis*, 540 S.W.2d at 310 (agency rules generally construed in same manner as statutes). Rule 3.284 is therefore unambiguous, and we do not defer to the Comptroller's interpretation but instead follow the plain language of the rule. *See 7-Eleven*, 311 S.W.3d at 683 ("'Unless the rule is ambiguous, we follow the rule's clear language.' We defer to an agency's interpretation of its own rule when the rule is vague or ambiguous, unless the administrative interpretation is 'plainly erroneous or inconsistent with the regulation.'" (quoting *Rodriguez,* 997 S.W.2d at 254–55)); *see also Myers*, 169 S.W.3d at 734–35.

In any event, the Comptroller's interpretation is contradictory to the plain language of the rule for three reasons. First, it tries to import into "orthopedic appliance" almost precisely the same language that the Comptroller expressly used only for "prosthetic device." Second, it tacks on the requirement that a "correction" of an orthopedic condition be "continual" or "ongoing" when there is no language in the rule to suggest this is the case. Third, although the interpretation is reflected in rulings that the Comptroller has issued to taxpayers over many years, these rulings do not bind us to accept an erroneous interpretation simply because it is longstanding. *See Myers*, 169 S.W.3d at 734. Consequently, we disregard the Comptroller's

11

interpretation and consider whether Zimmer's instruments are exempt under the plain language of rule 3.284.

In order to receive summary judgment, Zimmer was required to prove that there was no genuine issue of material fact concerning its instruments and that it was entitled to a judgment that they are exempt as a matter of law. *See* Tex. R. Civ. P. 166a(c). Zimmer presented undisputed summary-judgment evidence that the instruments at issue are "designed specifically for use in the correction or prevention of human deformities, defects, or chronic diseases of the skeleton, joints, or spine," including the affidavit of Kevin Cook, a director and former development engineer with Zimmer's parent company. Based on his personal knowledge of the design of Zimmer's instruments, Cook stated that each one is designed by product-development engineers to facilitate a specific step in a specific procedure to implant one of Zimmer's prostheses. Cook also described in detail the step-by-step performance of one of Zimmer's surgical techniques, emphasizing the specialized role of each instrument used in that technique to correct a defective knee joint. Attached as exhibits were video excerpts from two corrective surgeries using Zimmer's instruments, diagrams of Zimmer's instrument kits, and copies of pamphlets instructing healthcare providers in the execution of Zimmer's techniques using its instruments. In the affidavit, Cook explained that these demonstrated the specialized purpose of each instrument and the fact that the surgeries are part of the correction of defective joints.

The Comptroller does not dispute any material fact in Zimmer's motion for summary judgment.[3] Nor does the Comptroller dispute that the instruments are exempt under

---

[3] The Comptroller cites conflicting evidence as to whether Zimmer's prosthetic devices might be successfully implanted without the use of the instruments at issue. However, there is no

the reading of the statute urged by Zimmer. Because Zimmer's summary-judgment evidence is uncontroverted and conclusively demonstrates that the instruments satisfy the definition of "orthopedic device" under tax code section 151.313(a)(5) and rule 3.284(a)(12), we hold that Zimmer is entitled to summary judgment. *See City of Keller v. Wilson*, 168 S.W.3d 802, 806 (Tex. 2005) (noting that evidence is conclusive when reasonable people could not differ in their conclusions).

The instruments at issue are exempt from use tax under the plain language of rule 3.284(a)(12) as it interprets tax code section 151.313(a)(5). Consequently, the trial court erred in granting the Comptroller's motion for summary judgment and denying Zimmer's.

## CONCLUSION

We reverse the trial court's order and render summary judgment in favor of Zimmer.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Pemberton and Henson;
    Concurring Opinion by Justice Pemberton

Reversed and Rendered

Filed: February 9, 2012

_____

indication that an item "designed specifically for use" in corrective procedures, as required by rule 3.284, must be strictly necessary for such procedures. This discrepancy therefore raises no "genuine issue as to any *material* fact." Tex. R. Civ. P. 166a(c) (emphasis added).