**Opinion issued August 18, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00554-CV

_____

**GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS, Appellant**

**V.**

**TEXAS BLC, INC., Appellee**

**On Appeal from the 250th District Court**
**Travis County, Texas[1]**
**Trial Court Case No. D-1-GN-17-002768**

---

[1]    This appeal was transferred from the Third Court of Appeals to the First Court of Appeals pursuant to an order of transfer by the Texas Supreme Court. *See* TEX. GOV'T CODE § 73.001. We are unaware of any conflict between the precedent of the Court of Appeals for the Third District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

**MEMORANDUM OPINION ON REHEARING**

Texas BLC, Inc. is an association of "bikini/latex clubs"—businesses that authorize consumption of alcohol on their premises but deny that their entertainers are topless because they cover themselves with opaque latex applied in a liquid or semi-liquid state. The Comptroller of Public Accounts adopted a rule that set forth its interpretation of "clothing" for the purpose of determining which businesses are sexually oriented and subject to the statutory fee. Under this rule, Texas BLC's members' businesses would be considered sexually oriented businesses and liable to pay the fee. Texas BLC sought a declaratory judgment under the Administrative Procedures Act ("APA") to declare the Comptroller's rule invalid. It argued that the rule does not comport with and imposes burdens in excess of the sexually oriented business fee statute. The trial court held that the rule was invalid, and the Comptroller appealed, challenging that ruling in a single issue.

We originally issued our memorandum opinion in this appeal on January 9, 2020, in which we concluded that a ruling from the federal district court for the Western District of Texas, Austin Division mooted the question presented in this appeal. The appellant—Glen Hegar, Comptroller of Public Accounts—filed a motion for rehearing; the appellee, Texas BLC, also urged this court to grant rehearing. While the Comptroller asked the court to either vacate the underlying

2

trial court judgment or issue an opinion on the merits, Texas BLC asked the court to abate the appeal pending the final resolution of parallel federal litigation.

We grant the motion for rehearing. On rehearing, we conclude that the ruling of the federal district court does not impede our jurisdiction in this case. *Cf. In re Texas*, No. 20-0394, 2020 WL 2759629 (Tex. May 27, 2020) (Supreme Court of Texas ruled on mandamus concerning statutory construction of the Election Code with regard to mail-in voting despite earlier federal court ruling permitting mail-in voting on other grounds). We withdraw our opinion and judgment of January 9, 2020, and we issue this opinion and judgment on the merits in their stead.

We reverse the trial court's declaratory judgment and render judgment that the Comptroller's rule is valid under the APA.

### Background

Businesses that offer "live nude entertainment" and allow the consumption of alcohol on their premises must "remit to the Comptroller a $5 fee for each customer admitted."[2] *Combs v. Texas Entm't Ass'n, Inc.*, 347 S.W.3d 277, 278 (Tex. 2011); *see* TEX. BUS. & COMM. CODE § 102.052(a); *see also* TEX. TAX CODE

---

[2] The purpose of the sexually oriented business fee is to discourage nude dancing in the presence of the consumption of alcohol and thus minimize the negative secondary effects of this combination. *See Combs v. Texas Entm't Ass'n, Inc.*, 347 S.W.3d 277, 280 (Tex. 2011) (identifying rape, sexual assault, prostitution, disorderly conduct among "crimes and social ills" that are "negative secondary effects" of combining alcohol and nude dancing). Fees collected under this rule are credited to the "sexual assault program fund." TEX. BUS. & COMM. CODE § 102.054.

§ 111.001 ("Comptroller to Collect Taxes"). These businesses are considered sexually oriented businesses ("SOB") for the purposes of the sexually oriented business fee ("SOBF") statute. *See* TEX. BUS. & COMM. CODE § 102.051(2). Under the SOBF statute, a sexually oriented business is:

> a nightclub, bar, restaurant, or similar commercial enterprise that:
>
> (A) Provides for an audience of two or more individuals live nude entertainment or live nude performances; and
>
> (B) Authorizes on-premises consumption of alcoholic beverages, regardless of whether the consumption of alcoholic beverages is under a license or permit issued under the Alcoholic Beverage Code.

*Id.* § 102.051(2). For the purpose of the sexually oriented business fee, "nude" means:

> (A) entirely unclothed; or
>
> (B) clothed in a manner that leaves uncovered or visible through less than fully opaque clothing any portion of the breasts below the top of the areola of the breasts, if the person is female, or any portion of the genitals or buttocks.

*Id.* § 102.051(1). The statute does not define "unclothed," "clothed," or "clothing." *See id.*

Texas BLC is an association of businesses that serve alcohol and offer live entertainment by women, who are partially covered by latex that is applied to their

4

bodies in a liquid or semiliquid state.[3] They deny that they are sexually-oriented businesses under the statute because the opaque latex their entertainers use does not leave any statutorily specified body part uncovered or visible.

In 2017, the Comptroller adopted a rule regarding the sexually oriented business fee ("the SOBF Rule").[4] 34 TEX. ADMIN. CODE § 3.722 (Tex. Comptroller

---

[3]    In an affidavit, which Texas BLC attached to its motion for summary declaratory judgment, Teresa Thompson, a representative of a bikini/latex club that belonged to Texas BLC, averred the following:

> The clubs that TBLC represents are "bikini/latex clubs" in that the entertainers who entertain at bikini/latex clubs wear: i) bikini bathing suit "bottoms" that cover the entertainer's buttocks and genitals; and ii) opaque latex cover-up that covers the dancers' breasts below the top of the areola (and the dancers' buttocks to the extent not completely covered up by the bikini bathing suit bottoms). [B]ikini/latex club performers wear opaque latex clothing that covers all portion of the breasts below the top of the areola as well as the genitals and buttocks. The genitals and buttocks of the entertainers were also clothed with bikini bottoms.

> The latex clothing is made from liquid latex applied to create cloth covering. The latex is applied in multiple coats and hardens into a latex sheet covering the breasts that is similar to—or more substantial than—other types of clothing material, including clothing made from synthetic materials. Latex covering formed from liquid latex provides a more secure covering than cloth bikinis. In my experience, when clubs prohibit dancers from dancing nude, some dancers will nonetheless sometimes pull their cloth bikinis aside or "accidentally" slip out of the bikini. That is not possible with customized latex clothing, because once applied latex cannot be shifted or removed without removing and destroying the latex covering.

> Thompson also averred that in 2013, several bikini/latex clubs settled a dispute with the City of San Antonio in which both sides agreed that bikini/latex clubs were not sexually oriented businesses for the purpose of a municipal zoning ordinance. Finally, she averred that bikini/latex clubs "employ latex clothing as a compliance device" to avoid the application of the sexually oriented business fee.

of Public Accounts, Sexually Oriented Business Fee). The SOBF Rule defined "clothing" as "[a] garment used to cover the body, or a part of the body, typically consisting of cloth or a cloth-like material. Paint, latex, wax, gel, foam, film, coatings, and other substances applied to the body in a liquid or semi-liquid state are not clothing." *Id.* § 3.722(a)(1).[5]

Texas BLC filed a declaratory judgment suit under the Administrative Procedures Act ("APA") challenging the validity of the SOBF Rule's definition of "clothing." *See* TEX. GOV'T CODE § 2001.038 ("Declaratory Judgment"). The trial court granted summary declaratory judgment finding the rule invalid, and the Comptroller appealed.

---

[4]     In 2015, Glenn Hegar became the Comptroller, succeeding Susan Combs, who served from 2007 until 2015.

[5]     The Rule also defined "nude" and "sexually oriented business" in the same way as the statute, *see* TEX. BUS. & COMM. CODE § 102.051, and it set forth "Clothing requirements," stating:

> An entertainer or performer will be considered "nude" for the purposes of this section unless the entertainer or performer wears fully opaque clothing that covers all portions of the genitals and buttocks, and if the entertainer or performer is a female, the entertainer or performer must also wear fully opaque clothing that covers the portions of the breasts below the top of the areola of the breasts.

34 TEX. ADMIN. CODE § 3.722 (b). These portions of the SOBF Rule are not challenged on appeal.

**Analysis**

The facts in this case are not in dispute. The parties agree that the entertainers in Texas BLC's member businesses wear "opaque latex cover-up that covers" their "breasts below the top of the areola (and the dancers' buttocks to the extent not completely covered up by the bikini bathing suit bottoms)." Texas BLC maintains that the SOBF Rule is invalid because the Comptroller exceeded its authority by interpreting an unambiguous statute and because the SOBF Rule substantively changed and contravened the statute. The Comptroller agrees that the SOBF statute is unambiguous, but it argues that the SOBF Rule defined an undefined term in consonance with the statute and that the trial court erred by declaring it invalid. The parties' dispute is thus solely a question of law regarding the validity of the Comptroller's SOBF Rule.[6] We review the Comptroller's sole issue, which involves statutory construction, de novo. *See R.R. Comm'n v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011); *Twin Creeks Golf Grp., L.P. v. Sunset Ridge Owners Ass'n, Inc.*, 537 S.W.3d 535, 539 (Tex. App.—Austin 2017, no pet.).

---

[6] Contrary to the assertion made by the Comptroller, the question in this case is not "Does liquid latex applied onto naked body parts constitute clothing?" Nor is the question in this case, as suggested by the amicus curiae Duncan Burch, Inc., "whether latex clothing *manufactured from liquid latex* constitutes clothing" for the purposes of the SOBF statute. Rather, our inquiry is limited to "whether the agency's rule is consistent with relevant statutory language or whether the agency had the authority to issue the rule." *Tex. Orthopaedic Ass'n v. Tex. State Bd. of Podiatric Med. Exam'rs*, 254 S.W.3d 714, 723 (Tex. App.—Austin 2008, pet. denied).

**I.     Legal standards applicable to this appeal.**

**A.     The Administrative Procedure Act authorizes a declaratory judgment action.**

The Administrative Procedure Act authorizes the "validity or applicability of a rule" to be "determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff."[7] TEX. GOV'T CODE § 2001.038(a). Section 2001.038 is a statutory grant of subject-matter jurisdiction that waives sovereign immunity. *See Combs v. City of Webster*, 311 S.W.3d 85, 100 (Tex. App.—Austin 2009, pet. denied).

**B.     The Comptroller is required to collect the SOB fees and authorized to make rules regarding the collection of SOB fees.**

The Comptroller is charged with collecting the statutory SOB fee. *See* TEX. BUS. & COMM. CODE § 102.056; TEX. TAX CODE § 111.001. The Comptroller "has broad discretion to adopt rules for its collection as long as those rules do not conflict with state or federal law." *Hallmark Mktg. Co., LLC v. Hegar*, 488 S.W.3d 795, 797 (Tex. 2016); *see* TEX. GOV'T CODE § 403.011 (general powers of Comptroller's office); TEX. TAX CODE § 111.02 (granting Comptroller rulemaking authority). The Comptroller can adopt only such rules as "are authorized by and

---

[7]     Although not challenged in the trial court or raised on appeal, we note that Texas BLC has standing to sue on behalf of its members by virtue of associational standing. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 447 (Tex. 1993) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

consistent with its statutory authority." *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017) (citations omitted). The Comptroller has no authority to "exercise what is effectively a new power, or a power contradictory to the statute," when such a power is "expedient for administrative purposes." *Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 494 (Tex. 2013) (quoting *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 316 (Tex. 2001)).

### C. Texas BLC had the burden to prove that the SOBF Rule is invalid.

"Courts generally presume that agency rules are valid, so parties who challenge a rule have the burden of proving its invalidity." *Tex. State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 33. A rule is invalid when it: "(1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions." *Id.* Determining the validity of a rule requires us to construe the statutory language. *Tex. Orthopaedic Ass'n v. Tex. State Bd. of Podiatric Med. Exam'rs*, 254 S.W.3d 714, 719–20 (Tex. App.—Austin 2008, pet. denied).

### D. Rules of construction applicable to statutes and rules.

In construing a statute, our primary objective is to give effect to the Legislature's intent. *Liberty Mut. Ins.*, 412 S.W.3d at 494; *see also TGS–NOPEC*

9

*Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011) (rules are interpreted under traditional principles of statutory construction); *Zimmer US, Inc. v. Combs*, 368 S.W.3d 579, 583 (Tex. App.—Austin 2012, no pet.) (same). "The 'surest guide to what lawmakers intended' is the enacted language of a statute." *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018) (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 463 (Tex. 2009)).

We consider the statute as a whole, rather than "favoring microscopic examination of isolated words." *Aleman v. Texas Med. Bd.*, 573 S.W.3d 796, 804 (Tex. 2019); *see Youngkin*, 546 S.W.3d at 680; *LMV-AL Ventures, LLC v. Texas Dep't of Aging & Disability Servs.*, 520 S.W.3d 113, 122 (Tex. App.—Austin 2017, pet. denied). When statutory language is unambiguous, we accord the words used their common meaning unless a different meaning is apparent from the text or the common meaning leads to an absurd or nonsensical result. *Youngkin*, 546 S.W.3d at 680; *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015); *see LMV-AL Ventures*, 520 S.W.3d at 122. We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted. *Lippincott*, 462 S.W.3d at 509. "We must avoid adopting an interpretation that 'renders any part of the statute meaningless.'" *City of Dall. v. TCI W. End, Inc.*, 463 S.W.3d 53, 55–56 (Tex. 2015) (quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014)).

Under the Code Construction Act, without regard to whether the statute is ambiguous, we may also consider the: "(1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the statute; and (7) title (caption), preamble, and emergency provision." TEX. GOV'T CODE § 311.023; *e.g.*, *Bridges v. Tex. State Bd. of Veterinary Med. Exam'rs*, No. 03-18-00010-CV, 2019 WL 639151, at *3 (Tex. App.—Austin Feb. 15, 2019, no pet.) (mem. op.) (applying Code Construction Act to statutory construction analysis).

**E.    Agency interpretations are given serious consideration, but deference is only appropriate when the statute is ambiguous.**

An "agency's interpretation of a statute is entitled to 'serious consideration.'" *Brazos Elec. Power Coop., Inc. v. Tex. Comm'n on Envtl. Quality*, 576 S.W.3d 374, 384 (Tex. 2019) (quoting *TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 438). But we defer to the agency's construction of a statute "only when the statutory language is ambiguous." *Id.* (quoting *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016)). If the statute is unambiguous, agency deference "has no place." *Id.* (quoting *TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173, 182 (Tex. 2013)).

"Whether statutory language is ambiguous is a matter of law for courts to decide, and language is ambiguous only if the words yield more than one reasonable interpretation." *Sw. Royalties*, 500 S.W.3d at 405 (citing *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013)). When a statutory term is undefined, it is typically given its ordinary meaning. *Id.* To determine the ordinary meaning of a term, we "look to a wide variety of sources, including dictionary definitions, treatises and commentaries, our own prior constructions of the word in other contexts, the use and definitions of the word in other statutes and ordinances, and the use of the words in our rules of evidence and procedure." *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014).

## II. Application to the SOBF statute and Rule

### A. De novo review

The SOBF statute defines "nude" as "(A) entirely *unclothed*" or "(B) *clothed* in a manner that leaves *uncovered* or visible through less than fully opaque *clothing* any portion of the breasts below the top of the areola of the breasts, if the person is female, or any portion of the genitals or buttocks." TEX. BUS. & COMM. CODE § 102.051(1) (emphasis added). Neither party argues that the statute is ambiguous. We likewise do not find that the statutory language yields "more than one reasonable interpretation." *Sw. Royalties*, 500 S.W.3d at 405.

Instead the parties dispute the meaning of the undefined terms "unclothed," "clothed," "uncovered," and "clothing," to which we accord their ordinary meanings. *See id.*; *Jaster*, 438 S.W.3d at 563. "Clothe" means "to cover with or as if with cloth or clothing: dress" or "to provide with clothes." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 234 (11th ed. 2003). "Clothing" means "garments in general; also: COVERING." *Id.* "Uncovered" means "not covered" or "not supplied with a covering." *Id.* at 1362. "Covering" is defined as "something that covers or conceals." *Id.* at 288.

Although the dictionary definition of clothing includes the word "covering," our interpretation of the SOBF statute must take into consideration the context in which the words are used and must not render any word meaningless. *See City of Dallas*, 463 S.W.3d at 55–56; *Crosstex Energy Servs.*, 430 S.W.3d at 390. The statute requires specified body parts to be covered by "fully opaque clothing" for the business to escape payment of the SOB fee. TEX. BUS. & COMM. CODE § 102.051(1). Construing "clothing" to mean any "covering" would ignore the Legislature's semantic choice, which we must presume is intentional. *See Lippincott*, 462 S.W.3d at 509.

In *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220 (2014), the United States Supreme Court defined "clothes" for the purpose of donning and doffing rules in the Fair Labor Standards Act. 571 U.S. at 227–28. The Supreme Court referred to

13

dictionary definitions contemporaneous with the enactment of the statute, and it concluded that "clothes" means "*items that are both designed and used to cover the body and are commonly regarded as articles of dress.*" *Id.* at 227. This definition must, too, be considered in the context of the statute under consideration, which dealt with a worker changing clothes as relevant to his or her workplace duties. *Id.* at 230 ("The statutory context makes clear that the 'clothes' referred to are items that are integral to job performance; the donning and doffing of other items [like bandages] would create no claim to compensation under the Act, and hence no need for the §203(*o*) exception."). The Court also distinguished between "clothes" and other wearable equipment. *Id.*

Despite the differing statutory contexts, the *Sandifer* definition is instructive as to the ordinary meaning of "clothing" or "clothes" as a tangible item intended to be used to cover a body. This is consistent with both the dictionary definition of clothing as "garments," and the plain language of the statute which requires the entertainers' bodies to be covered by "fully opaque clothing"—not merely covered—in order for the business to escape payment of the SOB fee. TEX. BUS. & COMM. CODE § 102.051(1). Texas BLC argues that the SOBF statute is "visibility-driven" and dependent on the content of the material or method of concealment. That argument would render the word "clothing" as used in the statute immaterial, and we are bound to give effect to all parts of the statute.

14

Our task in this appeal, however, is not to formulate a precise definition of clothing but to determine whether the Comptroller's rule contravenes the statute.[8]

---

[8] The preamble to the SOBF Rule in the Texas Register demonstrates that it was adopted with notice and comment, and it addressed the comments that were submitted. *See* 42 Tex. Register 219–223. The preamble stated:

> The Comptroller of Public Accounts adopts amendments to §3.722, concerning sexually oriented business fee, to include a definition of clothing that conforms to the commonly understood meaning of the term, to memorialize the comptroller's existing interpretation of what constitutes clothing, and to provide examples of evidence that the comptroller will consider in determining whether a business is a sexually oriented business . . . . The amendments will facilitate uniform enforcement of the Sexually Oriented Business Fee statute.

> Subsection (a) is amended to define a term. New paragraph (1) is added to define the term "clothing," which appears in Business and Commerce Code, §102.051 (Definitions), but is not defined therein. The term is given its commonly-understood meaning. The definition also includes examples of items that are not clothing. Subsequent paragraphs are renumbered accordingly.

> . . . .

> The comptroller received written comments from the Texas Entertainment Association opposing the proposed amendment. The Association contends that the proposed definition of "clothing" is contrary to the plain meaning of the term and that the proposed rebuttable presumption is unprecedented. . . .

> The comptroller received written comments from Curtis Osterloh opposing the proposed amendment. Mr. Osterloh contends that the proposed amendment is unreasonable and inconsistent with the plain meaning of the statute, and that the proposed amendment would violate the First Amendment of the United States Constitution. . . . .

> The comptroller received form letters from individuals who identified themselves as entertainers at various unidentified clubs who opposed the proposed amendment. . . .

15

The comptroller received form letters from individuals concerned about the loss of revenue to their businesses. . . .

. . . .

On December 12, 2016, the comptroller held a Public Hearing. . . .

. . . .

In general, the proposed amendments do three things: clarify the clothing requirement; articulate the presumption that the comptroller applies in identifying sexually oriented businesses; and expand the period for keeping records. . . .

The clothing requirement. Several commenters contended that the proposed definition of "clothing" was unreasonable, inconsistent with the plain and ordinary meaning of the term, and violated the rule of statutory construction that taxing statutes must be strictly construed against the taxing authority. Although no comment proposed an alternative definition, the general tenor of the comments was that any "covering" should constitute clothing and specifically, that opaque latex applied to the body in a liquid or semi-liquid state should be considered clothing.

The comptroller rejects the comments suggesting that any covering constitutes "clothing" as that term is commonly used. Establishments that permit entertainers to apply liquid or semi-liquid latex are commonly referred to as topless clubs. So the assertion that these substances are within the plain and ordinary used of "clothing" is disingenuous. Typically, "clothing" does not include foams, liquids, gels, or similar substances, whether edible or inedible.

. . . .

In this case, if the Legislature had intended that the body parts be merely "covered," the Legislature could have easily said so, and with far fewer words. . . .

But instead of simply requiring that the performers be "covered," the Legislature adopted a longer requirement stating the manner in which the performers must be "clothed." The manner in which a performer must be "clothed" appears in the statutory definition of

The challenged SOBF Rule defined "clothing" as a "garment used to cover the body, or a part of the body, typically consisting of cloth or a cloth-like material." 34 TEX. ADMIN. CODE § 3.722(a)(1). This is consistent with the SOBF statute. The second sentence states the Comptroller's interpretation of what is not clothing: "Paint, latex, wax, gel, foam, film, coatings, and other substances applied to the body in a liquid or semi-liquid state are not clothing." *Id.* This is also consistent with the SOBF statute, which requires entertainers to be covered by clothing, such as a tangible garment or an item designed and used to cover the body and commonly regarded as an article of dress. *See Sandifer*, 571 U.S. at 227.

## B. Texas BLC's arguments lack merit.

Texas BLC argues that the SOBF statute is about the visibility of certain body parts and that the test for whether a business is subject to the SOB fee is

---

"nude." The Legislature previously used this definition of "nude" in Texas Penal Code, §43.251. The use of identical language indicates that the Legislature intended identical interpretations. Penal Code, §43.251 prohibits the employment of minors in a place of business permitting, requesting, or requiring a child to work "nude." Under the interpretation advanced by the commenter, businesses could legally employ children under conditions in which the children would only be "covered" with latex applied to the body in a liquid or semi-liquid state. The comptroller rejects that interpretation. Rather, the comptroller believes that its proposed amendment, which requires "clothing," carries out the Legislature's manifest purpose and intention in enacting these statutes.

. . . .

17

"whether certain body areas are sufficiently covered." But that formulation of the test ignores the statute's requirement that the entertainer be covered by clothing.

Texas BLC argues that the SOBF Rule adds new requirements about manufacturing of clothing and about material content that are absent from the SOBF statute. For example, Texas BLC argues that although the Comptroller maintained that liquid latex is not clothing, in a hearing in a similar case, the attorney general conceded that clothing could be made from latex.[9] We disagree with the premise of Texas BLC's argument. The SOBF Rule provides examples of what are and are not clothing. It distinguishes clothing as "typically consisting of cloth or a cloth-like material," as opposed to a liquid that is painted on, which is not clothing. 34 TEX. ADMIN. CODE § 3.722(a). We interpret the rule as a whole. *See Aleman*, 573 S.W.3d at 804; *Youngkin*, 546 S.W.3d at 680; *LMV-AL Ventures*, 520 S.W.3d at 122; *see also Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 61 (Tex. 2015) ("The canon of statutory construction known as *noscitur a sociis*—'it is known by its associates'—holds that the meaning of a word or phrase, especially one in a list, should be known by the words immediately surrounding it."). Because the SOBF Rule expressly excludes substances applied to the body in a liquid state from clothing, we conclude that clothing must mean, at the very least, garments

---

[9] In context, however, the attorney general was referring to something like a catsuit or superhero costume made from a solid sheet of latex and donned while it is in a solid state.

made from a solid material. Texas BLC argues that under the SOBF Rule, an entertainer wearing a raincoat or scuba suit would nevertheless be considered nude. But a raincoat and scuba suit, if opaque, would satisfy both the SOBF statute and the SOBF Rule because both would be opaque clothing covering the specified body parts.

Texas BLC also argues that liquid latex is more modest than clothing, which can be pulled or brushed aside. It therefore contends that liquid latex use better effectuates the purpose of the SOBF Rule. Our task, however, is to construe the language in the statute. That language does not concern whether the covering is modest or demure, rather it requires that the entertainers be covered by clothing.[10]

Texas BLC argues that the Comptroller was not authorized to adopt a rule memorializing its interpretation of the word "clothing" because the statute is unambiguous. The Comptroller's authority to adopt rules is provided by the Tax Code:

> The comptroller *may adopt rules that do not conflict with the laws of this state or the constitution of this state or the United States for the* enforcement of the provisions of this title and the *collection of* taxes and *other revenues under this title*. In addition to the discretion to adopt, repeal, or amend such rules permitted under the constitution and laws of this state and under the common law, *the comptroller may*

---

[10]     Moreover, although the entertainers' bodies may be covered by latex, liquid latex can be used to cover an entertainer's body in a manner that simulates nudity, which would not necessarily further the objective of the SOBF statute. *See Schleuter v. City of Fort Worth*, 947 S.W.2d 920, 924 (Tex. App.—Fort Worth 1997, pet. denied) (discussing local ordinance that defines simulated nudity).

*adopt, repeal, or amend such rules to reflect changes* in the power of this state to collect taxes and enforce the provisions of this title due to changes in the constitution or laws of the United States and judicial interpretations thereof.

TEX. TAX CODE § 111.002(a) (emphasis added). There is no statutory prohibition on adopting, repealing, or amending rules when a statute is unambiguous.[11] The only consequence of the lack of ambiguity in the statute is that a reviewing court will not defer to the agency's interpretation, and we have not done so in this analysis. *See Brazos Elec. Power Coop.*, 576 S.W.3d at 384; *TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 438.

Texas BLC also argues that the SOBF Rule was invalid because it was a response to findings by administrative law judges that entertainers who used liquid latex to cover specified body parts were not nude for the purpose of the SOB fee. Texas BLC also relied on testimony from a former enforcement officer who also believed a liquid latex covering was sufficient to render an entertainer not nude under the SOBF statute. An agency is authorized to adopt or amend rules due to changes in the law including judicial interpretations. *See* TEX. TAX CODE

---

[11]  Similarly, Texas BLC argues that an agency's interpretation of a law is only entitled to consideration when the statute is ambiguous. That is a misstatement of the law. We may consider the agency's interpretation and must afford it serious consideration, but we only *defer* to the agency's interpretation when the statute is ambiguous. *See Brazos Elec. Power Coop., Inc. v. Tex. Comm'n on Envtl. Quality*, 576 S.W.3d 374, 384 (Tex. 2019); *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011).

20

§ 111.002(a). Moreover, neither the enforcement officer's testimony nor the ALJ's decision are any indication of the intent of the Legislature that enacted the statute.

Finally, Texas BLC argues that the SOBF Rule requires businesses to exercise greater control over entertainers, which could jeopardize their status as independent contractors. We disagree; the Rule simply requires the business owners to pay the SOB fee if its entertainers are nude and alcohol is consumed in the establishment.

* * *

Having considered the arguments of the parties and our own de novo review and construction of the SOBF statute and SOBF Rule, we conclude that the Rule is in harmony with and does not contravene the statute. *See Tex. State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 33. We hold that the trial court erred by holding the rule invalid, and we sustain the Comptroller's sole issue.

## Conclusion

We reverse the judgment of the trial court, and we render judgment that the SOBF Rule, 34 TEX. ADMIN. CODE § 3.72(a), is valid.


Peter Kelly
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.

21